Madam Clerk, please call the first case. 114-1237 Sloane Valve Company v. Herlovinda & Barrett Good morning, Justices, Counsel. May it please the Court, Elizabeth Capoletti on behalf of the employer Sloane Valve Company. I would respectfully submit to you that the decision of the Commission on February 11, 2008, should be reinstated as it is supported by the manifest weight of the evidence. Now, this matter was tried on May 2, 2006, with all issues in dispute. But the main issue presented was whether an accident occurred which caused injury to the claimant's right shoulder. How long was it after the alleged accident that the claimant reported to the medical personnel or anybody that she had an issue with the shoulder? I believe that the first time she really made any complaints of shoulder, you know, specific shoulder complaints, because there is some discussion of arm, right? But the first time she ever actually said, I hurt my shoulder with this incident with the tray was on March 30, 2004, to Dr. Aker. So approximately six weeks after the occurrence. That was part of the reason that the arbitrary of the Commission found against her, correct? That's correct. I mean, basically we have two versions of the events. We have the claimant's testimony and her version of how this occurred and her testimony that she felt this immediate onset of shoulder pain. I mean, there's no question that that was her testimony. But in opposition to that testimony was the respondent's witness, the employer's witness, Nurse Brunmuller, who testified that no such history was ever provided to her of an immediate onset of shoulder pain. And the claimant heard both of those versions. I mean, the Commission heard both of those versions and found the claimant not credible. I mean, the Commission just simply did not believe the claimant. And, in fact, in their decision, I'm going to quote it for you, they state Nurse Brunmuller's testimony was quite detailed and consisted within medical records and medical notes. In contrast, the claimant's testimony was quite evasive. I mean, they just simply did not believe the claimant. What was the purpose of Judge Tolmare's remand? So, obviously this has been up and down several times. So Judge Tolmare's remand, he basically said, I think there's some factual issues that I'd like the Commission to clear up. And he identified three specific factual issues, evidence regarding the claimant's prior right neck and upper arm pain, evidence of being treated for prior shoulder problems, and an MRI and who actually prescribed that MRI. So he made three specific, I guess, findings or indications in his decision as to what he wanted. What did you assume the relevancy of those first two directives to be? Relative to Judge Tolmare? I think he wanted to know why it was that the Commission was struggling with the claimant's testimony. You know, what support beyond, you know, what was there in the medical records relative to her testimony regarding this immediate onset of shoulder pain and her prior medical treatment, clear prior treatment for her right shoulder problems and complaints. So he wanted the Commission to basically set out, I guess, more clearly as to their basis of finding that the claimant was not credible and their basis in the medical records which supported, you know, their finding. What did they do in response to those directives? So they were very clear and they answered each of his questions and they identified in the records that the claimant had in fact, despite her testimony to the contrary, had in fact made prior shoulder complaints prior to the incident and in fact actually sought treatment for her shoulder prior to the February 13, 2004 accident. And they specifically pointed that out to Judge Tolmare where in the record that evidence existed and they pointed out that she had actually been seen by Dr. Lewis commencing on July 8 of 2003 where she made specific complaints of neck, upper back, and shoulder problems and she sought treatment for him. So the Commission pointed that out and the Commission also pointed out that when the claimant was evaluated by both Nurse Blunwalder on numerous occasions as well as Dr. Miller, the company physician, that there was no documented complaints of shoulder pain. That all of her complaints, all of the claimant's complaints, focused on her, certainly her forearm and her hand. But there was never any complaints that were documented by either the nurse or Dr. Miller of any immediate onset of shoulder problems. She saw Dr. Alexandra on March 4, 2004. Is that correct? That is correct. In his notes, there is absolutely no mention of her reporting any right shoulder pain, only wrist and hand pain. That's correct. On March 15, she sees Dr. Vender. Vender examines her and he indicates that if she had injured her right shoulder on February 13, she would have reported significant right shoulder pain when he examined her one month later. Is that not his opinion? That's correct. And that was before the Commission when they issued their first opinion. Is that correct? That's correct. Okay, thank you. That is correct. I have a question. Sure. The trial judge has set aside the Commission's decision, citing as one of the reasons for doing so, I quote, the Commission's reliance on erroneous and irrelevant information, excuse me, erroneous and irrelevant evidence. What do you discern he was referring to? I'm not sure. I mean, I'll be honest with you. This decision from the second decision from the circuit court judge really puzzled me. And I didn't spend a lot of time or actually I didn't spend any time really in my brief about the actual decision from Judge Lopez-Sapiro because this court has always been very clear that we're actually looking at the Commission's decision and whether or not it's against the manifest weight of the evidence. But, I mean, there are several things in Judge Lopez-Sapiro's opinion I just didn't understand. Specifically, he states the primary evidence to consider in workers' compensation claims is medical evidence. And this court has told us on numerous occasions that in certain circumstances medical evidence isn't even necessary, that a claimant can prove their entitlement to benefits by their testimony alone. Well, here's another statement. I think it's at pages 13 and 14 of the circuit court's decision, that first decision. In reconciling the evidence of the parties against one another, the court may look to the credibility of the witnesses to make a determination. Can you comment on that? Well, I think it's always the fact finder's providence to weigh the evidence, right, and to place the weight and determine credibility. And, quite frankly, I believe that with all due respect to Judge Lopez-Sapiro, he usurped the fact finder's function. I mean, he clearly re-weighed the evidence because, I mean, he doesn't come out and say that the claimant is credible, but he basically states that Nurse Grimlauder's testimony should be discounted because she was a party opponent, basically weighing the evidence. I mean, that's exactly what he was doing, was, you know, re-weighing the evidence and finding that the claimant's testimony was more credible. And the decision also speaks to applying credibility in a vacuum, and any findings of credibility must be fully supported in the record. That's on page 14 of his decision. I mean, the whole point of the trial is to create the record, and it's the fact finder's duty to assess the credibility. And that's what the commission did. They did it not on one occasion, not on two occasions, but on three separate occasions. They repeated over and over again, we do not find the claimant credible. We don't believe her version of the events of the accident. And that's a matter of well-settled law. That is a matter reserved to the province of the fact finder in this case, the commission. Is that what you're saying? Absolutely. The trial judge doesn't get to re-weigh the credibility of the witnesses, does he? No. No. I mean, no. And I think that there's a good reason behind that because credibility isn't just based on what the witness is saying. It's how the witness is saying it. Of course, the commission never bothers to see how the commission says it, do they? The commission itself? Yes. And they're the fact finder. So I'm wondering why their assessment of credibility by reading a record is any better than the trial judge's, other than the fact that we have to engage in the fiction. Right. Well, that's definitely a weird consequence of how the law is written, right? I mean, I don't think it's surginarious that they have this strange quasi-appellate. But at the same time, I think this — In answer to that general discussion, you can have commissioners appropriately appointed based on their expertise in the statute and also in that area. Is that a bigger fiction than the one I said? Well, I think it's part of it. If the commission is going to make a different credibility finding than the arbitrator, they have to be very clear in why they're doing that as well. I mean, they can't just do it in a vacuum. Well, that's only because we issued an opinion that said they had to say that. Because they were doing it without giving any indication as to why they were going in the other direction. I agree. But to their expertise, that is their function as the trier effect in workers' compensation cases. So basically, they're balanced in regard to the interest of all parties, whether it's the employer or the client. Yes. Yes, I mean, that's the bill. Or if everything is one. Okay. Correct. That is — I would agree. So I believe that the commission was clear in why they didn't believe the claimant. I believe there's sufficient evidence in the record that supports the commission's finding that the claimant was not credible, that her testimony was evasive. The medical records that — from her initial treatment at the company clinic, Nurse Glenmulder, Dr. Miller, and Dr. Bender, none in any way memorialize a history of right shoulder pain. The claimant was actively treating for upper arm and neck pain. She had a physical therapy prescription long before the accident. And she wasn't credible in her testimony. She specifically denied ever having any prior complaints or treatments relative to her right shoulder. I mean, she was very emphatic about that on her direct exam. And that simply was not true. So I would respectfully request that you reinstate the decision of the commission as it is supported by the manifesto of the evidence, and therefore vacate the other decisions from the circuit court. Thank you. Morning, Your Honor. May it please the court, counsel. These three words, erroneous, irrelevant, and misstatements, I submit to you that you should affirm the circuit court decision, because the decision that both the circuit court judges came to the conclusion of is the correct finding in this case. Well, what is the meaning of irrelevant and erroneous evidence? What was the circuit judge referring to? If I may, Your Honor, may I go through what I believe are those irrelevant — And it's both material and immaterial misstatements. Immaterial, the date of the accident, December 13th versus February 13th that we stipulated to. The second — and I'm going through the decision in front of me. The second error — The commission had the date of the accident wrong? Yeah. And it's — I would say — Is there a basis to reverse them? In conjunction with the other totally erroneous — Well, tell us what these things are. Okay. That she complained of a neck and upper arm discomfort on February 16th, 2004. There is nothing in the record that states that. She complained of upper arm pain and right hand pain. That's it. She was under physical therapy for her neck only prior to this. And there's nothing in the record that states that. What was the first date she complained of shoulder pain? She complained of upper arm pain on February 16th, 2004. What about shoulder pain? Upper arm pain, Your Honor. She had a torn rotator cuff. She had a small torn rotator cuff. What did she tell Dr. Alexander that was wrong with her? That she had upper arm pain and right hand pain. She told that to Dr. Alexander? Dr. Alexander on March 4th, 2004, Your Honor. And she said what? I was asking that question previously. What did she say? And on that date, she orders an MRI for the right shoulder. This could only lead you to conclude that she thought there was some pathology to the right shoulder. What did the MRI reveal? My notes indicate there was no mention by the claimant reporting any right shoulder pain, only wrist and hand. Am I wrong? I believe it states right hand and upper arm, Your Honor. And if you take a look at the month of March 4th, Dr. Alexander, her primary care physician, on March 4th, she orders that MRI. Well, there's absolutely no question she did not report any form of upper arm or shoulder pain to Dr. Vendor on March the 15th. Well, Your Honor. Elbow, forearm, and wrist? If you're looking east at 5 o'clock, you're not going to see the sunset. He only examined her right wrist. He specifically testified that he only examined. I think he reported that that's what she told him. Elbow, forearm, and wrist. She related at trial and to all her other doctors, I hurt my right hand and my right upper arm. Dr. Vendor. So if we comb this record, we're going to find that every doctor she went before, she complained of right shoulder? She complained of right shoulder, right upper arm. Every doctor. Including Vendor. To Dr. Vendor. Vendor says she didn't. Vendor says she didn't. He's one of the every doctors. And if you take a look at what he was assigned to do, he was assigned to look at the right wrist. He wasn't asked to look. But that's not what we're questioning, Your Honor. He says she only reported that pain. Well, again, he's a pain expert, and he was assigned one specific test. And I asked him. What's wrong with Grunger? Who says she never complained of any shoulder pain at all? Complained only of wrist again. Again, Your Honor, I contend that Dr. Miller's notes, the company doctor, three days after the accident, March 16th, right hand and upper arm pain. March 16th? March 16th. Three days after the accident. And, Your Honor, if there was a note in there, in the record, in the company employee personnel file. When was the accident? February 13th, 2004. And three days after the accident, March. Yes. No, I'm sorry. February 16th. I apologize. I said March. February 16th. Yeah, we had a hard time with the facts. Okay. February 16th, 2004. There's a note that I cited in my brief. And, again, if there were a note stating that there was neck and arm therapy, whether it's upper arm or shoulder therapy, part of that, the case would be over. But that note does not exist. Counsel, what is your understanding of the standard of review by which we determine whether a commission's decision should be upheld? What is your understanding of the legal test? Okay. If it's against the decision, it's against the manifest with evidence. If it has no basis in fact and law. If it's based on erroneous, irrelevant, and misstatements of the record. Are you aware of the document that says that we should uphold the commission's decision if there is sufficient evidence in the record to support it? Meaning there could be some things you could pick apart and cite to the contrary. But as Justice Hoffman pointed out, you have the nurse who your client went to immediately after the alleged accident, reported no shoulder pain. You've got you admitting that to vendor, now acknowledging she did not report right shoulder pain. So the commission could decide if they believe those witnesses and not your claimant, then what's wrong with it? I think you have to take a look at the entire decision and take a look at all those areas that I pointed out, Your Honor. And in reliance on irrelevant, even if she did have a prior problem in the decision, it says she'd been complaining of this forever. Not only is it not true, it would be irrelevant. What's irrelevant? That if she had a complaint of the shoulder pain six months ago, what we're dealing with is a February 13, 2004 accident. Yes, but you do have the accident now set in February. February 13. And she saw the company doctor on February 16 and complained of upper arm pain and right hand pain. Okay. And then after that, she goes to her own doctor on that same day, March 4th. So are you saying Tomer's demand is irrelevant? No, absolutely not. Well, you've said it's irrelevant. Well, he's... That's higher pain, right? He spelled the same thing that Sabero spelled. It's like, what is this? You just can't have these many mistakes. And this goes to your question, Justice Hudson. Where do you draw the line? How many mistakes are you going to let through? How many mistakes are you going to let through? You have to base it on facts. She saw Dr. Mueller twice, didn't she? She saw him, I believe, just twice, yes. Yeah, she saw him on February the 25th? Yes. What did his notes say about what she was there for? I believe it was for the upper extremity. Let me read it to you. Patient returns with complaints of lower right arm and wrist swelling and pain. She has known morphia scleroderma, localized type. This area of claimed skin and arm wrist problem has no evidence of plaque or wrist thickening. It may or may not be related. She did injure her palm of her hand from her working with parts, but there was no injury there. Objectively, there are no findings except subjective pain. It's exactly what he wrote. That's a mistake, too? No, no, that's not a mistake. She said she injured her right hand and her upper arm. She didn't say that on the 25th. She did not say that. I agree with you there. So she didn't say it on the 25th, and she didn't say it on March the 15th. And the commission, who's the fact finder, finds her not credible and enters a decision, and we're supposed to turn that over. I would say you should affirm the circuit court decision because of the misstatements, because of the erroneous, just made-up facts that they have, but not only on the actual facts, the testimonies of the doctors. Setting aside your allegation of made-up facts, what he just referred to was not made-up. Bottom line is you're complaining of immediate and severe shoulder pain following the accident, didn't tell the nurse right after that, then went to several doctors by your own admission now, didn't tell them she had the severe shoulder pain, and we're supposed to ignore that and pick apart the record and say, well, they made a couple of other mistakes. Does that mean that an opposite conclusion is clearly apparent with all of these records that contradict the claimant's testimony? I believe that you should equate upper arm and shoulder pain as one, Your Honor, and not separate them because they shouldn't be separated. How do we do that? If she didn't specify, we're supposed to just fill in the gaps here in the evidence? No, just take it that she did complain, as the record is clear, of right hand pain and upper arm pain, that she did not articulate the difference between the arm. I'm sorry. Maybe you'd like to finish your statement and let me talk. No, go ahead. I'm sorry. Now, when did she, according to your view of the record, complain of upper arm shoulder pain? Upper arm pain three days after the accident to the company doctor. And we'll find that. Yes, and I quoted it in my brief. Okay, well, we'll look for it. Again, to answer your question, when you have this many mistakes in the record, the commission decision has to be based on the correct facts, and also they misstated not only the factual evidence but the medical evidence, and they misquoted what Dr. Romano testified to. If you take a look at what his testimony was, that regardless of whether she was holding the tray outright from her hands or whether she was holding it, that either one is a competent cause of a rotator cuff tear. The only medical evidence in the record, cause of opinion, is Dr. Romano, who states specifically that this is related. Both Dr. Romano and Dr. Alexandria say that she has a minor rotator cuff tear and it was probably caused by an acute trauma. Both of them say the only reason why they related to the accident is because she told them that. And if you don't believe her, the basis for their causation opinion kind of goes out the window, doesn't it? We have a specific causation opinion from Dr. Romano who looked at all these records. What did Dr. Romano say? It was an acute injury, and based upon what she told him, it was related to the accident. That's exactly what he said. Well, I mean, he also said he reviewed the medical records and he reviewed the MRI. And what else are you going to go by? Well, the MRI didn't take place until March the 24th, isn't that correct? That is correct, yeah. And that was ordered by Dr. Alexandria? Yeah, Alexandria. And again, along with the immaterial decisions, I mean, statements, it states in the decision that Dr. Cravetti ordered it. Again, they mixed up the entire record. They misstated the entire record. But what I was pointing to with Dr. Romano, he said whether it's you're holding out the tray or the trays, you're holding the trays down here, that it's a competent cause. And that is the only medical evidence. Dr. Vendor never examined the shoulder. He's not a shoulder surgeon. He didn't do any provocative tests. Absolutely no examination of the shoulder. The only medical evidence before you is that of Dr. Romano. Who didn't do the examination? Dr. Vendor, their Section 12 examiner. And she told Dr. Vendor she burned her shoulder? I believe she did, yes. Oh, you believe she did? Yes, based on the fact that she told everybody else. And that's what she testified to. Told everybody else, okay. Thank you. Thank you. I'm just going to respond very briefly. I think if you go back and look at the records and you look at the February 13th and the February 16th and the February 25th nurse's notes, as well as Dr. Miller's reports from February 16th and February 25th, there's no indication of upper right arm pain. In fact, it actually says forearm and hand. That was the whole point, that when the claimant first presented to the nurse on February 13th of 2004, she really made no complaints other than a broken tray and then did say, oh, I have a little swelling in my hand. There is no complaints documented, even of her upper arm, until we get to Dr. Agron. And I think it's the March 4th note of 2004 from Dr. Alexander, her primary care physician, it is clear that there's no upper arm complaints. It talks about the right arm and hand and the injury all being to the hand and lower wrist. Further, Dr. Alexander did not order the MRI on March 4th, 2004. She actually ordered it on March 6th, 2004. And she ordered it at the request of the claimant who said, what about my shoulder MRI? But again, there's still no history of the claimant injuring her right shoulder at work on February 13th, 2004, until March 30th of 2004. And yes, Dr. Vendor didn't examine her shoulder. He didn't examine her shoulder because she never made any complaints of shoulder pain. It was very clear in his testimony that she voiced lots of complaints. She voiced lots of complaints, her hand and her elbow and her pinky. She never made any complaints of shoulder pain. So I would submit to you that the commission's decision is certainly supported by the manifest weight of the evidence and should be reinstated. Thank you. Thank you, counsel, both for your arguments in this matter. We'll be taking it under advisement. The rest of this decision shall issue.